Mr. Zas, you have reserved 2 minutes for rebuttal. That gives you 8 to start. As soon as you're ready, you can begin. Good morning, Your Honors. May it please the Court, Edward Zas from Mr. Maldonado. The government promised not to seek an upward departure from the guidelines range of 10 to 16 months. But in sentencing, it argued that the range flies in the direction of the principles and criminal law where there should be a ratcheting up effect. Was that before or after the district court had expressed misgivings about the guidelines range? That was after. The court came in and expressed some concern about whether the 10 to 16 month range was sufficient. And then defense counsel proceeded to explain why she thought it was. The defendant allocuted the government, the court turned to the government and said, you want to say anything before I impose sentence? And then the government made these remarks. It was mirroring the exact point that the judge made prior to that. It wasn't just the judge was talking about giving an above guideline sentence. The judge talked about that he had gotten 41 months previously and that hadn't deterred him. So this was mirroring exactly what the district court had come up with on its own at the beginning of the proceeding, right? I wouldn't say exactly, but the point is the judge doesn't err by saying what the judge said. But when the United States commits in a plea agreement not to seek a departure from the 10 to 16 month range, it cannot then come in and effectively blow up the agreement by telling the judge, in effect, you're right, this sentence, this range flies in the face of accepted principles. But the AOSA was permitted to argue where in the range that he should get the 16 months as opposed to the 10, right? That's correct. So the prosecutor, in mirroring what the judge said about the ratcheting, that usually you want to give more time, could have been arguing this is an artificially low guideline and because of that you should give him the 16. He didn't say either, he didn't, the ratcheting up effect suggests possibly that he was saying I agree with you, it should be higher than 16, but he never, she never said that. So why should we send it back for re-sentencing for a different judge on that type of record? Judge Bianco, I have several responses. First, you're absolutely right that if the government had said that this defendant got 41 months last time and anything less than 16 would be outrageous, you need to give 16, which is effectively what they said in the letter, which we're not complaining about. That's not the breach. But what they said went much further because they said that the range itself flies in the face of accepted principles. They couldn't have been saying that and asking for 16. That's a contradiction. But it was not, I mean, I understand what you're saying and I don't think the AOC should have phrased it that way, but the question is, if it was inartfully phrased and it could be interpreted the way that you're suggesting, which I agree with, but as soon as it's raised, the government makes clear, you know, the government cites a prior case where that exact thing happened and we said it was corrected immediately. It could have been interpreted as being a breach, but as soon as it was raised, the government made clear, no, no, we don't want anything above 16. Well, Your Honor, this Court looks to the substance of what the argument was, right? This is at the crucial moment when Judge Brown is deciding what sentence to impose. Am I going to stick within the range or go above? And at that moment, they say, and I don't think this is ambiguous. I don't think it's something that can be clarified. They say the range flies in the face of accepted principles and criminal law where there should be a ratcheting up effect. And I've only highlighted that, but they don't stop there. They go on to explain exactly what they mean. Every time you commit the same offense, the punishment should go up. But can I just interrupt for a second? It seemed to me that this was an almost philosophical argument about deterrence, which is that one of the 3553A factors is deterrence. Generally, deterrence would suggest that if the sentence for the last identical crime was 41 months and it didn't deter, then that would suggest you need a longer sentence to deter. It's not the only factor, of course, that's relevant to sentencing. The guidelines are also a factor, and the guidelines here are a whole lot lower. And so it wasn't obvious to me that the government was saying throw out the guidelines range and impose at least 41. What they were saying was deterrence in terms of the principles behind it would suggest that, yeah, this sentence is – the guidelines range is too low, but there are other things to consider. Would it be wrong if they had said it the way I just said it? Would that be reasonable? I was about to say that I pretty much agree 100 percent with what you're saying, but they promised not to ask. No, no, but I'm saying if I had – if the government had said what I just said, look, just as a matter of deterrence, just, I mean, here's the theory behind deterrence. But there are other things, of course, that weigh in on what's an appropriate sentence here. Would that have been okay? Or you're saying that merely referencing this sort of logical conclusion from a deterrence argument that 41 is the lowest sentence that could be imposed, that is a breach? Let me see if I can answer it this way. First, the number 41 is not really relevant. The agreement is 10 to 16. I know. If they're asking for 17, they're in breach. And when they say that a sentence within this range flies in the face of – except difference was whether that's deterrence or 3553A or public safety or whatever it is, if they wanted to make that argument, they were completely free to make that argument, but they shouldn't have signed a plea agreement that bound them not to make the argument. The agreement said nothing about whether they were going to seek a variance or not, right? That's correct. And the government knows how to do that. And do you agree if you say the normal course would be for the government to reserve the right to seek a variance? Yes. Because they know – everybody knows what the guidelines calculation is. And if the government's not happy with it and wants to suggest to the court that there's a need for a variance, they generally reserve it. So the question is, to some degree, by not agreeing to that, had they put you on notice or left your client with the impression that they would not seek a variance. They didn't – in their agreement with you, they told you or you and your client or your predecessor and your client, his client or her client, they didn't – part of the bargain wasn't the right to tell the judge, you know what, judge, this is not enough. This flies in the face of deterrence. This is a ratcheting up of, you know, of criminal behavior. In fact, the very words that the prosecutor used in answering a judge's question. So simply answering a judge's question suddenly becomes not seeking a variance but answering a question. Is that it? Judge Wesley, I think – I'm embarrassed because you've said it better than I – than I've said it. Your question – yes. Because you have a number of cases to move, and so – and it's different from state court where a judge allows their viewpoint to be part of the transaction. Rule 11 prevents that in federal court, so we have that. But the government normally says, if we're going to seek a variance because we don't like this, we're going to seek it. And then you know what the deal is. Yes. So the question is going forward, not seeking a variance allows the government – not reserving to their right to seek a variance then means that the government can seek a variance. Is that it? If they don't say that they reserve the right to seek a variance. Or we'd have to find that this wasn't seeking a variance on the language used here, which to quote the government refers to in page 25, inartful. Page 22, imprecise. 22, imperfect. Page 2, poorly chosen. Page 38, too close in tone and substance to forbidden advocacy. I have interesting questions for the government on this. To have been well advised. And lastly, at page 26, better left unsaid. This is the government's brief in front of us. Yes. Your Honor, if I can, I want to be very clear with you on your point. Because the first part of what you said in your question to me goes to the fundamental question. What's the reasonable understanding of the parties when they enter into the agreement? And one thing you can consider is course of dealing with the United States. So as you point out, they know how to reserve their right to seek a variance. And they omitted it for whatever reason from this agreement. And this Court has recognized that after Booker, people use variance and departure interchangeably often, even though technically, legally, they're different things. But they didn't even have to go that far. Like in Riera, the government didn't specifically reserve a right to seek a variance, but did specifically reserve their right. They said if the Court is contemplating any departures or differences than what we've agreed to, we reserve the right to respond to those questions. That's not here either. So the reasonable understanding, and this is confirmed by defense counsel's contemporaneous reaction, was, and this is immediate. We have the judge's contemporaneous reaction on page 77 of the appendix. When this is raised, Judge Brown says, let's talk about the government's response. There's already been a suggestion that the government was violating the plea agreement today. Again, for avoidance of any doubt, it was a suggestion I rejected wholesale. I do not believe the government made any such attempt. So you're telling me that this was clearly a breach and they clearly were intending to argue for an upward variance, but the judge who was sitting there at the time and heard the statement in context didn't even view it that way, right? Well, Judge Brown certainly has that advantage of being there and hearing the arguments. In context. But, Your Honor, you have to go back. His initial reaction when the breaches first made any rules is to say this is information within the meaning of paragraph two of the plea agreement. That's a legal conclusion, not a factual determination. And this Court has made clear that information is one thing and advocacy is another thing. The government was free to explain how the guidelines came to be lower now. They were free to explain my client's history. They were free to explain the procedural background. What they were not free to do expressly or impliedly with a little wink, whether it was intentional or not, to say that 16 was too low. And that is effectively what they said. And to make matters worse, the judge then agreed. And as you pointed out, I think it was Judge Sullivan, the judge then goes up by more than 100 percent, citing many of the same arguments that the government had made. Now, I'm not saying that causation in that sense is required. This Court has said you don't have to show prejudice in that sense. But here it's worth noting that the judge then says almost exactly what the prosecutors said. The judge said it all first. Yes. Yes. But that is not a license for the government to then jump on the bandwagon. The government could have said, Your Honor, we stand by the agreement. Your Honor, 16 is the right sentence. Your Honor, he got 41 months last time. 16, anything less, is outrageous. But they did not. Well, the government could have stopped the decision with regard to variances to the court. We take no position with regard to variances. Yes. Yes, Your Honor. And Judge Bianco, you are correct that this judge says that he rejects the idea that it was a breach. But I submit to you that that was based on a legal misunderstanding, that he's reading Paragraph 2 without considering Paragraph 5, which prohibits the motion for an upward departure. The government then — Well, do you think that was lost on Judge Brown? Well, what was lost on him is — Well, he has the agreement. I mean, that's a pretty standard feature in an agreement. Yes. He's been doing this for a while. Yes. Your view is he didn't understand that there was some bar to the government seeking an upward departure? No, no. He understands that. But he says that this is not a motion for an upward departure. And it's unclear exactly what he means. They didn't use the words upward departure. They didn't formally move. Right. So I don't understand what you're saying is the confusion or the misapprehension that Judge Brown — It's a legal error because he's — What's his legal error? He says this is information allowed by Paragraph 2 of the plea agreement. And he's not mentioning — He has to read that harmoniously with Paragraph 5. Yes, they can give information, but they can't advocate for a sentence above the range. But, I mean, why is it not a response to the judge's own question about, well, how does this comport with deterrence, the objective of deterrence, which seems to me that it's not — That's the Riera case, which the government — but it actually favors us on this. The Court specifically said that while they could respond to Judge Owen's order in that case to give law and the facts relating to the departure, it could not advocate. The fact that the judge expresses concern doesn't blow up the plea agreement. The government still has to stand by the agreement. And it's worth noting, again, this was the whole bargain. It's hard to see what else this defendant got for this plea agreement except to lock in the government on 10 to 16. I know, but they did that when this issue came up. The government did it three times. The government explicitly said three times that we're not seeking a variance. Your argument is just that they can't undo what was said earlier, right? Is that the argument? I mean, I can agree three times they said explicitly after this issue came up, we are not seeking an upward variance, right? They couldn't have been clearer about that. Well, they said we're not moving for a departure. Right. We're not seeking that. Right. They weren't seeking more than 16. Everybody understood they weren't seeking more than 16. Yeah, but this Court doesn't – the government always says they're not breaching. The government never explains how what they actually argue is a request for 16 months. A lot of times it comes up and there's no clarification in it. We just have sort of a cold record where the government might have suggested an upward variance explicitly or implicitly and there was no subsequent clarification of that. But this – there was – it was brought up and three times the government made clear we're not seeking more than 16 months, right? Yes, but then that's not – it's not relevant. When – if you look at what they said, Judge, it's not ambiguous. It's not something that can be clarified to say the range flies in the face of accepted principles. And then when they're called out for the breach to say, no, no, no, we're not seeking a sentence above the range, that's nonsense. That's nonsense. And the Court should not tolerate it. This is the United States of America. The Court has said that you hold the government to meticulous standards of fairness when they enter into a plea agreement. And we're asking you to enforce that meticulous standard here. This was not what they promised and not what they bargained – not what my client bargained for. So we'd ask you to vacate the sentence and remand for resentencing before a district judge to preserve the integrity of the plea bargaining process. If the Court has no further questions. Well, you've got two minutes for rebuttal, so we'll hear from you again. Thank you, sir. Mr. Davis. May it please the Court. My name is Brandon Davis, and I'm an assistant United States attorney in the Eastern District of New York. And you were not the assistant below? I was not. Where's that assistant? That assistant has since left the office. Oh, okay. Your Honors, the comments at issue here were poorly chosen words, but they were in response to the district court's concern about the defendant's criminal history and principles of specific deterrence. Immediately after the prosecutor made these comments, she clarified that she was only seeking a sentence at the top of the guidelines range, which this plea agreement permitted the government to do. But she did say, quote, flies in the face. The sentence flies, quote, flies in the face of escalating punishment, right? She did say that, Your Honor. Yeah, that's a – and I'm not going to punish you. I don't mean to punish or – I understand. Don't get me wrong, counsel. My recitation of the words – I appreciate the frankness and the straightforwardness of the government's brief, but what's troubling is, is that the language that she used, I mean, can be reasonably interpreted, notwithstanding Judge Brown's apt, in fact, set of conclusions that it wasn't influenced by whatsoever and that he didn't see it taking a variance. She said flies in the face, said that Maldonado's, quote, most violent criminal activity was that it was being overlooked because it had aged out. I mean, she was making a case why the range was inadequate, wasn't she? Your Honor, I – I mean, she was agreeing – she was agreeing with Judge Brown. I apologize. I apologize. It's okay. I don't mean to interrogate you. But she was – she was agreeing with Judge Brown, who was saying, geez, this doesn't seem good enough, enough. And yet she – and so after the fact, she says, well, yeah, I agree with you. It ignores his most violent criminal activity and is inconsistent with his prior 41-month sentence. But we're not seeking a variance. Your Honor – Why not just say – I mean, in an agreement where they could have – you could have reserved the right to seek a variance. The government of your office could have taken the position that this is not enough. That's correct. Okay. And you've got – and you've made a – you've entered into a contractual – in essence, a contract with a defendant to enter a plea of guilty, and you don't reserve the right to seek a variance. And yet, if you answer a judge's question, say, you know what, Judge, this is totally inadequate. Migrants. Okay. That's not kind of sane. Go ahead, Judge, and up the time. Your Honor – Is it okay with us? The district judge here on, I think, at least four occasions commented about the defendant's criminal history and about his concerns about the principles of specific deterrence. And so, yes, the prosecutor should have caveated her remarks by explaining that she was only seeking a guideline sentence, albeit one at the top of the range. Your Honor, I understand. Why didn't you just own the fact that you'd agreed to it and you hadn't reserved the right to contest it, seek a variance? Why didn't you just own that and let it go? She should have – What's the need to tell Judge Brown he's right? Your Honor, Paragraph 2 of the plea agreement does permit the government to inform the district court about the defendant's criminal history. And I think – Like it flies in the face? Your Honor, I agree that the language was heavy-handed and prone to misinterpretation. It's the language of advocacy, isn't it? I – Do you agree with me that that's the language of advocacy? Your Honor, I think it's the language of someone who got carried away from the district court's inquiries into the defendant's criminal history. That's it. And I think that when confronted by the notion that she may have breached the plea agreement, the prosecutor took immediate action in explaining that she was only responding to the district court. She did so two pages after the comments were made. She did so twice in a written submission four months later, and she did so again in the second sentencing proceeding. I think that the district court's – Your Honor, Shannon rings the bell. Your Honor, I'm aware that this Court has been reluctant to give the government a way to ever unring the bell, but I'll note that in Puckett, the Supreme Court said that at least some breaches can be cured. And in Amico, this Court said that a brief breach of an agreement can be cured by an immediate retraction afterwards. Since Puckett, the 5th, 3rd, 11th, 1st – sorry for that order – at least four other circuits have expounded on that and given the government ways to cure a breached plea agreement where the retraction is thorough, repeated, and immediate. And I think that this record speaks volumes, given that we have a two-day sentencing proceeding, four months in between the first and the second day. We have a written submission in which the government advocated for a guideline sentence, and we have a district judge who, you know, so thorough was the government's retraction in that second sentencing proceeding that the district judge almost dismissed it and said, I don't want to hear about this anymore. I understand you want a guideline sentence. And so I think that, you know, the Third Circuit uses language that – the inquiry is whether the defendant gets the benefit of the bargain, and they define it as the parties presenting a unified front to the sentencing judge. And I think in here, even given that problematic language in the first sentencing proceeding, the defendant does get that benefit of the bargain. He has another sentencing proceeding where the government very explicitly says, Your Honor, I am only seeking a sentence at the higher end of the guidelines range, which is 16 months. I also want to note that the district judge's reaction to all of this does speak volumes. In Riera, this Court held that, you know, there is no breach of a plea agreement where the district judge asks for the information, the prosecutor was permitted under the plea agreement to respond, and then repeatedly clarified that the government was not actually seeking a breach. Here, the district court, his initial reaction, I think Judge Bianco said it on page 77, but it's also on page 68. His initial reaction is that I asked for this information, and you are permitted to give it to me. And I think that that has to be credited in Riera. There is another dispute about whether the district judge was actually asking for this kind of information, just like there is here. In this case, what is the information? Because there is a distinction between an information and an opinion about the sufficiency of the guidelines range in light of the 3553A factors. Right. That information. I think it is information. The only thing is whether this guidelines range meets the requirements of 3553A. That's a question for information. I don't think it was only about the adequacy of the guidelines range. It was also the fact that the district judge was asking for this information The judge talks about the number of instances of prior criminal conduct. He says some of these are more serious offenses, and I will tell counsel up front if you want to address this in your comments. And if you want to address that, because I think under 3553A, I at least, at least I think I need to think about that. And so I do think that he is asking the parties to comment on the defendant's criminal history. And I think that the prosecutor is entitled to do that under paragraph 2 of the plea agreement. Now, I've admitted in my brief quite candidly that her comments went too close to what this Court in Riera calls, you know, the tone of advocacy that could be interpreted as breaching the plea agreement. But still, she was permitted to expound on the defendant's criminal history, and she took immediate action afterwards to walk that back. She was also permitted to advocate. It wasn't like she had agreed to a specific sentence. She was permitted to advocate within the range. And that's an important distinction. If she had said everything she said, if she came out and said judge, you're right, this guideline is artificially low, because it's not taking into account his criminal history, the fact that he got 41 months previously. It's an artificially low guideline. And for that reason, you should give him the upper end of the range. That would have been completely consistent with the plea agreement. It's just that she didn't say that last part. But advocating or pointing out that the guideline is artificially low could be a reason to argue for the high end of the range, right? That's correct, Judge Bianco. I want to note that her comments were on page 65 of the appendix, but on page 69, just three pages later, she does say what you said. She says, the comments I made were more towards what the government's position is in terms of an appropriate sentence. It would be more on the higher range of the guidelines. She immediately hit that point that she should have said up front. And so I think given that thorough – given that immediate retraction, given the fact that it was repeated across multiple months to now remand this case to a new district judge when this current district judge was obviously well steeped in the fact, it's just – it's unnecessary on a record this robust. And given everything that the government attempted to do to right the ship here, I think that this is a case where if, first of all, under Riera, there was no breach of the plea agreement, but even if you find that one of those problems wasn't met and there was, the breach was immediately and thoroughly cured. Unless there are any other questions, I rest on the arguments in the papers and ask this Court to affirm the sentencing judge. Thank you. Thank you, Mr. Davis. Ms. Azz, we'll hear from you for two minutes if we'd like. Thank you, Your Honors. This Court has held over and over again that where the government's commentary reasonably appears – reasonably appears to seek to influence the Court in a manner incompatible with the agreement, we will not hesitate to find a breach, notwithstanding formal language of disclaimer. That principle should govern here. Whatever the government subjectively intended to do by its remarks, a fair reading of what they argue is that reasonably appears to seek to influence the Court to go above the range. No reasonable observer reading the transcript would think that the government wanted a 16-month sentence. I mean, I think if you stop at the fly-in-the-face line, I think that's right. But I guess when you consider the retractions and the clarifications and the fact that this was then put off, it was a written submission and then another sentencing proceeding, I guess I'm not sure it's as clear as you're suggesting. It is, Your Honor, because on their argument, they're saying we're asking the judge to impose a sentence that we've just argued flies-in-the-face of accepted principles and needs ratcheting up. How could they have sincerely wanted 16 months if they had just trashed the whole guidelines range? And it doesn't stop at flies-in-the-face. I just want to go back to the point I made with the prosecutor, that you could make the argument that the guideline is too low and therefore you should give the high end of the range. He got the benefit of this really low guideline and he should give the high end of the range. So she was permitted to make that argument, right? This idea that she couldn't advocate I think is inconsistent with what the agreement was. She could advocate for the high end, right? Well, you're the first part of the first. Could she advocate for the high end? Yes. And in advocating for the high end, could she point out that this guideline was ridiculously low? No. No? No. Why not? That's what the promise means. When you agree to stipulate to a guideline range and you're not going to seek a departure, everyone understands that we're coming in. The prosecutor can't say when they agree to a guideline range, Judge, you should give the high end of this range because he has a robbery conviction. That's different. That's different. You're not saying the range is too low. You just gave me a hypothetical where the government says. The range is too low because the robbery conviction wasn't considered, right? Well, that's now you're getting into departure territory because 4A1.3 says that that's an encouraged ground for a departure. So they can't be cued up. They can't be cued up. It could be a reason for a high end recommendation too, right? But that's not what they asked for, Judge. Well, the range is six whole months. I mean, it's, right? I mean, it's 10 to 16. I'm sorry, Your Honor. I couldn't read. The range is 10 to 16. So the range is six months, right? That's correct. Right. It's not like 10 to 35. So I guess arguing for high end of the range is something somewhat higher, but in the broad scheme of things, it's, I guess if you're arguing for the high end, you're at least also arguing the legitimacy of the higher end as being adequate in the context of this crime as opposed to, quote, flying in the face of. I think that's right. And just to be clear, Judge Bianco, yes, we didn't object and we don't object now to the government's letter, which essentially says everything Your Honor has just said. The problem is when push comes to shove, when they're now right in front of the judge who's about to impose sentence, at least they thought so, it gets adjourned but they're about to impose. Every time you commit the same offense, the punishment should increase because it's now you have done it multiple times. I think it's worth noting that the defendant's most violent criminal activity is, like Your Honor said, not considered in his criminal history score, and on and on. I'm sorry, that's not a request for 16 months, no matter what the government then says. The bell had already been rung that this range wasn't there. And just to conclude, we've talked a lot about Judge Brown. Judge Brown is not the reason we're here. It's the government that committed this mistake, and this Court reviews de novo whether there was a breach. So there's no deference owed to Judge Brown's after-the-fact statement that this was not a breach. Thank you so much for your time. It's been a long day. Thank you. That was all right. Well argued. We will reserve decision.